UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY ERWIN DOUGLAS,<br>SAMUEL WILLIAM WRIGHT,<br>JAMES CLAYTON LINDSAY,<br>FRISCO SAN JUAN AYALA, and<br>BRIAN LEE SELLERS,<br><br>Defendants. | NO:  CR-12-00049-RMP-2, 3, 4, 5, 6,<br><br>ORDER ON DEFENDANT DOUGLASS'S MOTION TO CHANGE VENUE |

BEFORE THE COURT is Defendant Gary Erwin Douglass's Motion to Change Venue, **ECF No. 254**. The Court held oral argument on December 10, 2012. Douglass was present at the hearing and represented by Michael V. Felice and Pete Schweda. Matthew F. Duggan appeared for the United States of America. The Court has reviewed the motions, the supporting documentation, and the file, and is fully informed.

ORDER ON DOUGLASS'S MOTION TO CHANGE VENUE ~ 1

## FACTS AND PROCEDURAL HISTORY

Charles Robert Wallace and several co-conspirators, including Gary Erwin Douglass, were indicted for their roles in an alleged conspiracy to distribute heroin. ECF No. 111. Following Wallace's arrest, the United States filed a motion for detention pending trial. ECF No. 14. Wallace opposed detention and instead requested release pending trial so that he could seek inpatient treatment for chemical dependency. ECF No. 82. On May 25, 2012, the magistrate judge denied the United States' motion for detention and entered an Order setting Wallace's conditions of release pending trial. ECF Nos. 105, 106. The conditions of release provided, among other measures, that Wallace be released to an agent of an inpatient treatment program on May 31, 2012. ECF No. 106. Douglass's motion to change venue centers on the events that follow Wallace's conditional release.

According to media reports, Wallace absconded from the inpatient treatment facility in early June. ECF No. 286, at 53.[1] On June 19, 2012, a vehicle that Wallace was traveling in was stopped by two Spokane County Deputy Sheriffs in north Spokane. ECF No. 286, at 7. A woman and a small child were also in the vehicle. ECF No. 286, at 17. Shortly after the stop, Wallace began shooting at the deputies, hitting both and seriously wounding one. ECF No. 286, at 7, 13. Wallace fled from the scene and traveled a short distance before abandoning the vehicle. ECF No. 286, at 11. Wallace then broke into the home of an 87 year old woman and took the woman's car keys through force. ECF No. 286, at 16-17. Wallace stole the woman's car and used it to lead the police on a high-speed chase on a busy highway leading north from Spokane. ECF No. 286, at 17, 33. The chase ended in Deer Park, Washington, when Wallace ran into a police car and a guardrail after the police had executed several maneuvers to disable the stolen

---

[1] The Court notes that Mr. Douglass attached a number of documents to his reply memorandum as support for his motion without authenticating those documents. The Government made no objection to inclusion of those documents. Therefore, the Court took judicial notice of those documents and noted the references to Defendant Douglass for purposes of analyzing pretrial publicity.

ORDER ON DOUGLASS'S MOTION TO CHANGE VENUE ~ 3

vehicle.  ECF No. 286, at 21.  After the crash, Wallace turned his gun on himself and ended his life.  ECF No. 286, at 20-21.

The events surrounding Wallace's post-arrest conduct received considerable attention in the local media.  ECF No. 286.  A video of the high-speed chase made from a police helicopter was released to the news media and aired on television numerous times.  ECF No. 286, at 34-43.  Media reports made reference to Wallace's extensive criminal history, the federal conspiracy charges that he was facing, and included some reference to the identity of his alleged accomplices in the federal conspiracy case, including Douglass.  ECF No. 286.  Media reports also focused on local controversy surrounding the cause of the events, including criticism of the decision to release Wallace to inpatient treatment pending trial.  *E.g.*, ECF No. 286, at 20-21.

The charges against Wallace were dismissed following his death.  The charges against Wallace's co-conspirators, including Douglass, are set for trial on March 11, 2013.

## ANALYSIS

Douglass contends that substantial pretrial publicity surrounding Wallace's post-arrest conduct makes it impossible to seat an impartial jury within the Eastern District of Washington and requests a change of venue on that basis.  Alternatively, Douglass suggests measures the Court could take to avoid actual prejudice in the

ORDER ON DOUGLASS'S MOTION TO CHANGE VENUE ~ 4

1  jury panel, including moving the location of the trial to Yakima, Washington;

2  drawing the jury pool from Yakima; or conducting sequestered questioning of

3  individual jurors..

4  **A. Motion to change venue**

5  The Sixth Amendment to the United States Constitution grants criminal

6  defendants the right to trial by an impartial jury.  *Irvin v. Dowd*, 366 U.S. 717, 722

7  (1961).  Ordinarily a criminal defendant's trial should take place in the district

8  where the offense was committed.  U.S. Const. amend. VI; Fed. R. Crim. P. 18.

9  However, due process considerations require transferring the trial to another

10 district if "extraordinary local prejudice" will prevent the defendant from obtaining

11 a fair trial in the district of the offense.  *Skilling v. United States*, 130 S. Ct. 2896,

12 2913 (2010) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).  Under Federal

13 Rule of Criminal Procedure 21(a), the Court may transfer venue if it is satisfied

14 "that so great a prejudice against the defendant exists . . . that the defendant cannot

15 obtain a fair and impartial trial" in the transferring district.

16 The Ninth Circuit has identified two types of prejudice that may support a

17 motion to transfer venue: presumed prejudice and actual prejudice.  *Hayes v.*

18 *Ayers*, 632 F.3d 500, 508 (9th Cir. 2011) (quoting *United States v. Sherwood*, 98

19 F.3d 402, 410 (9th Cir. 1996)).  Douglass asserts presumed prejudice in support of

20 his motion to change venue.

ORDER ON DOUGLASS'S MOTION TO CHANGE VENUE ~ 5

Prejudice may be presumed "when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988). Prejudice should be presumed only in extreme cases. *Skilling*, 130 S. Ct. at 2915; *see also Harris*, 885 F.2d at 1361 (stating that presumed prejudice is "rarely applicable" and "reserved for an extreme situation" (internal citations omitted)).

In *Skilling v. United States*, the Supreme Court emphasized that its jurisprudence on pretrial publicity "cannot be made to stand for the proposition that juror exposure to . . . news accounts of the crime . . . alone presumptively deprives the defendant of due process." *Id.* at 2914. (quoting *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975)). "Prominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*." *Id.* The Supreme Court identified several factors in *Skilling* relevant to an analysis of presumed prejudice due to pretrial publicity: (1) the size and characteristics of the community in which the crime occurred; (2) the nature of the news stories; and (3) the timing of the trial in relation to the alleged crime. *See id.* at 2915-16.

Douglass's argument focuses on the sheer number of local news stories surrounding Wallace's post-arrest conduct. Douglass notes that between June 19, 2012, and November 10, 2012, local television stations aired 260 news stories

regarding Mr. Wallace and his conduct. ECF No. 286. According to Nielsen Audience calculations submitted by Douglass, these stories were viewed a total of 9,541,643 times. ECF No. 286. The local print media also ran numerous stories about the events. However, prominent news coverage does not, by itself, create a presumption of prejudice, *Skilling*, 130 S. Ct. at 2914, and an examination of the factors outlined in *Skilling* demonstrates that Douglass's trial should not be transferred on the basis of pretrial publicity.

      *i.*    *The size and characteristics of the community*

According to the United States Census Bureau, there are approximately 1,105,950 people living in the twenty counties that make up the Eastern District of Washington. United States Census Bureau, *State & County QuickFacts: Washington* (Jan. 10, 2013), http://quickfacts.census.gov/qfd/states/53000.html. Spokane County alone had an estimated population of 473,761 people in 2011. *Id.* Given the size of the district, it is difficult to imagine that twelve impartial individuals cannot be found. *See Skilling*, 130 S. Ct. at 2915.

      *ii.*    *The nature of the news stories*

The Court must consider whether the news reports contained a "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Skilling*, 130 S. Ct. at 2916. For example, in *Rideau v. Louisiana*, 373 U.S. 723 (1963), police filmed the

defendant's detailed admission of guilt without the defendant's knowledge or consent, and without the presence of counsel. *Id.* at 724. The tape was then broadcast to a local television audience on three separate occasions shortly before trial. *Id.* The Supreme Court found that venue should have been transferred, in part because much of the community had essentially seen the defendant plead guilty to the crime for which he was charged. *Id.* at 726. As the Court put it in *Skilling*, "Rideau's dramatically staged admission of guilt . . . was likely imprinted indelibly in the mind of anyone who watched it." 130 S. Ct. at 2916.

      The news stories that Douglass complains of focus primarily on Wallace and do not contain anything similar to a taped confession by Douglass or any of his alleged co-conspirators. Indeed, the vast majority of the submitted documents do not mention Douglass at all, only Wallace, who is no longer a defendant in this case. Douglass contends that the prejudice to Wallace from these news stories could spill over to the trial of Wallace's alleged co-conspirators, including Douglass. However, this is not the type of "smoking gun" evidence that the Supreme Court has found necessary to a change of venue based on pretrial publicity. *See Skilling*, 130 S. Ct. at 2916. Most of the stories focus on Wallace's shooting of the two deputies with little or no mention of the alleged drug conspiracy. Some of the stories submitted are not even relevant to Wallace particularly, but rather to other deputies or police officers being shot by

unassociated individuals at different times. Although the news stories do not reflect well on Wallace and others involved in the alleged conspiracy, including Douglass, they are not so prejudicial that jurors could not expected to set those reports aside to hear the case in an impartial manner.

      *iii.*    *The timing of the trial*

The Supreme Court has noted that passage of a significant period of time between the media reports and the defendant's trial can have "a profound effect on the community and, more important, on the jury, in softening or effacing opinion." *Patton v. Yount*, 467 U.S. 1025, 1033 (1984). The events giving rise to the news coverage occurred on June 19, 2012. The documentation Douglass submitted in support of his motion indicates that the news coverage of Wallace's actions was heavily concentrated in the month of June and had nearly abated by mid-July of 2012. The trial of Douglass and his alleged co-conspirators is not set to begin until March 11, 2013, nearly eight months later. Thus, Douglass's case does not present a scenario where, for example, the defendant's trial begins just weeks after the broadcast of extensive and extremely inflammatory publicity. *See Rideau*, 373 U.S. at 724. The passage of time in this case further indicates that an impartial panel of jurors can be found within the district.

When considered together, the factors announced in *Skilling* and an examination of the Supreme Court's precedents demonstrate that Douglass's case

ORDER ON DOUGLASS'S MOTION TO CHANGE VENUE ~ 9

does not present an extreme situation where change of venue is warranted based solely on the existence of pretrial publicity.

**B. Alternative measures**

Douglass suggests that if the Court denies his motion to change venue, then the Court should instead adopt measures to avoid actual prejudice due to pretrial publicity. Douglass suggests that prejudice can be avoided by such actions as moving the location of the trial to Yakima, Washington; drawing the jury pool from Yakima; or conducting sequestered questioning of individual jurors.

Relocating the trial to Yakima would not be consistent with the convenience of the witnesses and the prompt administration of justice. *See* Fed. R. Crim. P. 18 ("The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."); *see also* Fed. R. Crim. P. 18, Advisory Comm. Notes, 1966 Amendment (explaining that Rule 18 was meant to "vest[] discretion in the court to fix the place of trial at any place within the district"). Douglass's request for a change of location is therefore denied.

Turning to jury selection, the process of impaneling an impartial jury is "particularly within the province of the trial judge." *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976). The Supreme Court has recognized that when an issue exists regarding the effect of pretrial publicity, the trial judge should be relied upon to

ORDER ON DOUGLASS'S MOTION TO CHANGE VENUE ~ 10

conduct jury selection in an appropriate manner "because the judge 'sits in the locale where the publicity is said to have had its effect' and may base her evaluation on her 'own perception of the depth and extent of news stories that might influence a juror.'" *Skilling*, 130 S. Ct. at 2918 (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)).

The Court concludes that it will not be necessary to identify a specific location other than Spokane from which to draw potential jurors because this district draws jurors from a broad geographic location. However, the Court will conduct sequestered questioning of jurors regarding any prior knowledge that they have about this case or the events involving Mr. Wallace. The Court also will entertain other suggestions about jury selection from the parties at the time of the final pretrial conference in this matter.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Douglass's Motion to Change Venue, **ECF No. 254**, is **GRANTED IN PART AND DENIED IN PART**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this 24th day of January 2012.

                    *s/ Rosanna Malouf Peterson*
                    ROSANNA MALOUF PETERSON
                    Chief United States District Court Judge